**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RUCALDEAU RENONDEAU,

                             Plaintiff,

               -against-

WILDLIFE CONSERVATION SOCIETY,
NEW YORK AQUARIUM, and DENNIS
ETHIER, *In His Individual and Official*
*Capacities,*

                           Defendants.
----------------------------------------------------------X

Docket No.


**COMPLAINT**


***PLAINTIFF DEMANDS***
***A TRIAL BY JURY***

Plaintiff, RUCALDEAU RENONDEAU, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1.    Plaintiff complains pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C §§2000e, *et seq.* (Title VII); 42 U.S.C. §1981; the New York State Human Rights Law, New York State Executive Law §§296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code §§8-107, *et seq.,* ("NYCHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being **Discriminated Against** and/or subjected to a hostile work environment on the basis of his **Race/Color** and **National Origin** and then **Retaliated Against** by his employer for engaging in protected activities.

1

2.    Plaintiff RUCALDEAU RENONDEAU is employed by Defendant WILDLIFE CONSERVATION SOCIETY.

3.    During his employment at Defendant WILDLIFE CONSERVATION SOCIETY, PLAINTIFF was constantly, continuously, and systematically subjected to discriminatory statements, insults, ridicule and harassment by his manager, supervisor DEFENDANT DENNIS ETHIER.

4.    Among other things, when PLAINTIFF first began working for WILDLIFE CONSERVATION SOCIETY, in an effort to ridicule, humiliate and subject PLAINTIFF to a discriminatory and hostile work environment, DEFENDANT ETHIER routinely referred to PLAINTIFF as a "***Haitian Motherfucker***" and/or "***Haitian Sensation***." At first, PLAINTIFF did not complain because he was new to the job, a provisional/probationary employee and did not want to suffer adverse employment actions as a new employee.

5.    When PLAINTIFF objected to the discriminatory comments, DEFENDANT ETHIER immediately began to retaliate against PLAINTIFF and subjected PLAINTIFF to demotions, intentional and blatant refusal(s) to promote, threats against his employment, assignments in dangerous and/or less desirable areas, harassment, intimidation, ridicule and other adverse employment actions. DEFENDANT ETHIER even went so far as to tell other managers to deny PLAINTIFF the terms and conditions of his employment and equal treatment because of PLAINTIFF'S complaints.

6.    PLAINTIFF eventually complained about DEFENDANT ETHIER'S conduct to Human Resources and then to the New York City Commission on Human Rights. As a result of his complaints, no action was taken against DEFENDANT ETHIER and DEFENDANT

ETHIER was able/allowed to continue to retaliate against PLAINTIFF.

7.  After complaining of Defendant DENNIS ETHIER'S discriminatory conduct, Plaintiff was and continues to be retaliated against to this day.

## JURISDICTION AND VENUE

8.  Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

9.  The Court has supplemental jurisdiction over the claims of PLAINTIFF brought under state and city law pursuant to 28 U.S.C. §1367.

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the acts complained of occurred therein.

11. Prior to the commencement of this Action, PLAINTIFF filed a Charge of Discrimination/Retaliation with the New York City Commission on Human Rights on or about August 14, 2018.

12. PLAINTIFF was given an administrative dismissal for administrative convenience by request and same was received by PLAINTIFF on or about December 27, 2018. (See Notice of Administrative Dismissal, dated 12/21/2018). PLAINTIFF now timely files this Complaint following said administrative dismissal.

13. Insofar as there exists other EEOC Charges and or Complaints pending with the New York City Commission on Human Rights, New York State Division of Human Rights and/or the EEOC, PLAINTIFF has made multiple requests for administrative dismissals of his collective pending complaints since December 2018 and have not received responses to his requests to date. At one point, PLAINTIFF'S counsel was advised that delays were cause by a governmental shutdown that took place in December 2018

3

through January 2019. Nevertheless, PLAINTIFF files this Complaint in order to timely comply with the aforementioned 90-day notice of right to sue issued to PLAINTIFF on 12/27/2018.

## PARTIES

14. That at all times relevant hereto, Plaintiff RUCALDEAU RENONDEAU (**hereinafter "MR. RENONDEAU"**) is a Haitian Male, with a dark complexion, and a naturalized citizen of the United States. MR. RENONDEAU is a resident of the State of New York, Kings County.

15. Defendant WILDLIFE CONSERVATION SOCIETY (**hereinafter "WCS"**) is a not-for-profit corporation that engages in wildlife conservation efforts. WCS owns, operates, controls, manages and/or supervises multiple parks throughout New York State, including, the Bronx Zoo, Central Park Zoo, New York Aquarium, Prospect Park Zoo, and Queens Zoo.

16. Upon information and belief, WILDLIFE CONSERVATION SOCIETY has more than 15 employees. WCS's main headquarters within the United States of America is located at 2300 Southern Boulevard, Bronx, New York 10460.

17. DEFENDANT NEW YORK AQUARIUM (**hereinafter "NYA"**) is a conservation park accessible to the public. NYA is owned, operated, managed and/or controlled by Defendant WILDLIFE CONSERVATION SOCIETY.

18. Defendant DENNIS ETHIER (**hereinafter "ETHIER"**) is the Operations Manager at Defendants WCS and NYA. At all times, ETHIER had supervisory authority over the workplace, including PLAINTIFF, and had the ability to affect the terms and conditions of PLAINTIFF's employment. Defendant ETHIER is being sued herein in his individual

4

and official capacities.

## MATERIAL FACTS

19.     PLAINTIFF became a Provisional Supervising Maintainer at NYA or about March 8, 2011, with an annual starting salary of $50,083.00. Plaintiff currently earns approximately $61,000.00.

20.     At all times, PLAINTIFF is an above-satisfactory employee and is qualified to perform the duties and functions of his job.

21.     On information and belief, PLAINTIFF was the only Black, Haitian employee at WCS/NYA.

21.     Defendant ETHIER is one of PLAINTIFF'S managers and direct supervisors at WCS/NYA.

22.     In or about December 2015, Defendant ETHIER referred to PLAINTIFF as a "***Haitian motherfucker***."

23.     Defendant ETHIER'S comment greatly offended PLAINTIFF because of its derogatory nature and because PLAINTIFF was the only Haitian employee at WCS/NYA.

24.     At that time, as PLAINTIFF was newly-placed under the supervision of DEFENDANT ETHIER, PLAINTIFF did not file a formal complaint at that time because PLAINTIFF was concerned about losing his job.

25.     PLAINTIFF did, however, object openly to DEFENDANT ETHIER when he referred to PLAINTIFF as a "***Haitian Motherfucker.***"

26.     Also, PLAINTIFF complained to the union and/or his union representative about DEFENDANT ETHIER'S statement/comment.

27.    Upon information and belief, PLAINTIFF'S union rep spoke to DEFENDANT ETHIER about PLAINTIFF'S complaint/concerns.

28.    From the point in time that PLAINTIFF objected to the racially derogatory comment, DEFENDANT ETHIER has continued to subject PLAINTIFF to an ongoing and continuous hostile work environment, which includes further racially-derogatory statements about PLAINTIFF as a Haitian individual.

29.    Following this "*Haitian Motherfucker*" comment made by DEFENDANT ETHIER, PLAINTIFF continued to feel discriminated against based on his national origin and race/color by Defendant ETHIER.

30.    Despite PLAINTIFF being/feeling clearly insulted by DEFENDANT ETHIER'S outrageous discriminatory statement, DEFENDANT ETHIER could not help himself and insisted that he must continue referring to PLAINTIFF in racially insensitive ways.

31.    Indeed, from the year 2016 to the year 2018, after PLAINTIFF objected to being called a "*Haitian Motherfucker,*" DEFENDANT ETHIER repeatedly called PLAINTIFF "***Haitian Sensation***" throughout the workplace.

32.    Upon information and belief, DEFENDANT ETHIER knew that PLAINTIFF was offended by the racially insensitive name and continued to refer to PLAINTIFF as same in order to further harass, annoy and frustrate PLAINTIFF.

33.    Upon information and belief, because PLAINTIFF objected, DEFENDANT ETHIER began to retaliate against PLAINTIFF to demonstrate to PLAINTIFF how complainers are treated.

34.    For examples, immediately following PLAINTIFF'S objection, DEFENDANT ETHIER began to treat PLAINTIFF in a hostile manner.

35.    DEFENDANT ETHIER began to constantly deny PLAINTIFF his preferred and/or requested days off.

36.    Among other things, DEFENDANT ETHIER began to assign PLAINTIFF abusive and less-desirable tasks such as assigning PLAINTIFF to work with harmful chemicals and materials alone and *without* adequate protection or safety equipment.

37.    Among other things, DEFENDANT ETHIER also began to isolate and order PLAINTIFF to paint filters by himself *without* adequate protection or safety equipment.

38.    DEFENDANT ETHIER began to order PLAINTIFF to perform cleaning and housekeeping tasks alone.

39.    DEFENDANT ETHIER began to order PLAINTIFF to work in dangerous ares, locations and high heights by himself with no one else assigned or around to watch and act in the event that PLAINTIFF fell or was injured.

40.    DEFENDANT ETHIER began to assign PLAINTIFF to work in construction areas and other dangerous sections of the facility.

41.    Though these were tasks that may have been assigned to PLAINTIFF, PLAINTIFF was singled-out and treated different than his similarly-situated coworkers in that PLAINTIFF was assigned tasks that were normally relegated to employees of lesser seniority and/or title.

42.    However, PLAINTIFF was singled-out and instructed to perform dangerous and/or less-desirable tasks in retaliation for engaging gin protected activity and due to his race/nationality.

43.    PLAINIFF'S similarly-situated coworkers were not treated in the same abusive and/or retaliatory fashion as PLAINTIFF. e

7

44.   The above described undesirable tasks were not assigned to PLAINTIFF before PLAINTIFF objected to being called a "*Haitian Motherfucker*."

45.   PLAINTIFF did not complain or object to being assigned the above retaliatory assignments because PLAINTIFF was in fear that DEFENDANT ETHIER'S retaliatory assignments would escalate if he complained.

46.   DEFENDANT ETHIER was successful in causing PLAINTIFF to fear for his employment if he, and because he, engaged in protected activity.

47.   In July 2016, PLAINTIFF complained to DEFENDANT ETHIER about being singled-out and assigned unfair tasks. Specifically, PLAINTIFF asked "*how come I am the only one being punished and assigned to this type of work?*"

48.    DEFENDANT ETHIER replied, ***"it's not punishment. You have to do it."***

49.   In August 2016, DEFENDANT ETHIER scolded PLAINTIFF because PLAINTIFF had a coworker assisting him with an undesirable assignment.

50.   Also, PLAINTIFF was given a supervisor title, but was being told to perform non-supervisory work - unlike his similarly-situated coworkers.

51.   Though DEFENDANT ETHIER knew that PLAINTIFF was a supervisor and/or had the supervisor title, DEFENDANT ETHIER meant to humiliate PLAINTIFF by relegating him to non-supervisor tasks/duties.

52.   DEFENDANT ETHIER specified that PLAINTIFF must perform these tasks alone.

53.   During the above-described periods, DEFENDANT ETHIER continued to refer to PLAINTIFF as the "***Haitian Sensation***."

48.   PLAINTIFF, directly and through his union, continued to protest the unfair and dangerous work assignments given to him by DEFENDANT ETHIER.

49.    In response, DEFENDANT ETHIER would attempt to subject PLAINTIFF to more adverse employment actions, including writing up PLAINTIFF.

50.    On many occasions, DEFENDANT ETHIER'S writeups were improper and/or had to be removed/dismissed.

51.    DEFENDANT ETHIER intended to harass, annoy, retaliate and/or cause hardship to PLAINTIFF by continuing to subject PLAINTIFF to unsupported and erroneous writeups.

52.    In or around November 2016, based on his salary, PLAINTIFF applied and was approved for a mortgage for a condominium. As a result, PLAINTIFF acquired a condo unit.

53.    Upon information and belief, as PLAINTIFF was happy and excited about becoming a property owner, PLAINTIFF advised his coworkers about his new property.

54.    DEFENDANT ETHIER was aware of PLAINTIFF'S purchase as well.

55.    Upon learning about PLAINTIFF'S acquisition DEFENDANT ETHIER, with malicious intent, sent notice to Human Resources that PLAINTIFF was being paid the incorrect amount and petitioned the department to reduce PLAINTIFF'S salary.

A. **Defendants Discriminated Against Plaintiff By Demoting Him For A Discriminatory Reason.**

56.    In February 2017 without warning, and due to recommendation of DEFENDANT ETHIER, WCS sent a letter to PLAINTIFF informing stating: "***The Human Resources Department had informed Payroll that your salary has decreased from $68,590 to $61,689 effective February 11, 2017 due to transfer and title change.***"

57.    However, PLAINTIFF had not recently been transferred and was unaware of any title change. PLAINTIFF had not received any type of disciplinary action against him, and certainly not one that would result in a demotion.

9

58.   As a <u>direct result</u> of the reduction of his salary, PLAINTIFF was unable to meet his financial obligations and could not afford the new condo that PLAINTIFF recently acquired. PLAINTIFF was at risk of losing his property.

59.   In order to keep his property, PLAINTIFF was forced to file for bankruptcy.

60.   PLAINTIFF also suffered great emotional distress, which caused PLAINTIFF to have to seek mental health counselling with a psychiatrist.

61.   DEFENDANT ETHIER was aware that PLAINTIFF had received the Supervising Maintainer compensation rate for the previous three and a half years and was performing the duties of a Supervisor Maintainer.

62.   On information and belief, Defendant ETHIER reached out to Human Resources and falsely told them that PLAINTIFF had been erroneously titled as Supervising Maintainer, and was actually a Maintainer.

63.   This was incorrect, as PLAINTIFF was always a Supervisor Maintainer while at NYA, even though his duties may have changed at different locations.

64.   At all times, DEFENDANT ETHIER knew that his assertions about PLAINTIFF'S salary and title were false.

65.   DEFENDANT ETHIER attempted to have PLAINTIFF'S salary reduced and his position stripped in retaliation for complaining about unfair duties, abuse, discrimination, hostile work environment and other work/contract related issues.

66.   On information and belief, DEFENDANT ETHIER did not attempt to have similarly-situated non-Haitian employees', who did not complain about discrimination and retaliation, salaries reduced or supervisory titles taken away.

67. PLAINTIFF told his union about the demotion and reduction in salary immediately after he found out about it. A grievance was filed on PLAINTIFF'S behalf by the union.

68. In late 2017, following PLAINTIFF'S protest about the salary reduction, Defendant ETHIER ordered PLAINTIFF move dangerous chemicals *without* necessary protective equipment, despite it not being part of PLAINTIFF'S job duties.

69. On information and belief, DEFENDANT ETHIER did not make similarly-situated non-Haitian employees, who did not complain about discrimination and retaliation, move chemicals, nor did he force them to work inconsistent wither their job duties.

70. PLAINTIFF also received certification as a forklift operator, which allowed PLAINTIFF to operate a forklift in the facility and allowed PLAINTIFF to be able to perform additional tasks.

71. However, also in late 2017, after PLAINTIFF had received a certification to work a forklift, DEFENDANT ETHIER instructed PLAINTIFF'S direct manager (David) to retract PLAINTIFF'S certification.

72. On information and belief, PLAINTIFF'S manager refused to retract PLAINTIFF'S certification because there was no legitimate reason to do so.

73. DEFENDANT ETHIER also contacted human resourced and falsely informed it that PLAINTIFF failed the forklift training - in further attempt to cause adverse employment action(s), loss of title, and financial hardship to PLAINTIFF.

74. Upon information and belief, DEFENDANT ETHIER misrepresented facts concerning PLAINTIFF'S forklift training to prevent PLAINTIFF from getting his supervisor title back.

11

75.    No such actions were taken against PLAINTIFF'S similarly-situated non-Haitian employees, who did not complain about discrimination and retaliation.

76.    In January 2018, Defendant ETHIER told another manager that he did not want to work with PLAINTIFF and/or did not want PLAINTIFF to work under him if PLAINTIFF regained his rightful title as Supervising Maintainer.

77.    On information and belief, DEFENDANT ETHIER did not subject any of PLAINTIFF'S similarly-situated non-Haitian employees, who did not complain about discrimination and retaliation, to this same suggestion.

**B. Plaintiff Complained of Discrimination and Filed A Grievance Regarding His Demotion and Defendants Immediately Retaliated Against Him.**

78.    PLAINTIFF contacted his union representative and the union filed a grievance on PLAINTIFF's behalf on March 20, 2018, for breach of contract for wrongful demotion and decrease to PLAINTIFF'S salary.

79.    Immediately following this grievance, DEFENDANT ETHIER ordered PLAINTIFF to remove insulation in an area in the facility that was under construction - again - *without* proper protective equipment.

80.    Traditionally, employees with less seniority and lesser title than PLAINTIFF are assigned this type of work to do.

81.    Despite customary practice, DEFENDANT ETHIER demanded that PLAINTIFF perform the task.

82.    Upon information and belief, DEFENDANT ETHIER did not make similarly-situated non-Haitian employees, who did not complain about discrimination and retaliation, remove insulation in construction areas such as PLAINTIFF.

12

83.    While performing this insulation removal task, PLAINTIFF became sick due to lack of proper protective equipment. As a result, PLAINTIFF was taken off of the assignment by his direct supervisor (David).

84.    Upon learning that PLAINTIFF was taken off of the abusive task, DEFENDANT ETHIER reprimanded PLAINTIFF'S supervisor (David) and insisted that PLAINTIFF return to the construction zone insulation removal assignment. PLAINTIFF was forced to return.

85.    Instead of continuing to file grievances about DEFENDANT ETHIER'S actions as same seemed futile in preventing the continued harassment and retaliation against PLAINTIFF, PLAINTIFF felt compelled to make a formal complaint to Human Resources.

86.    On or about April 4, 2017, PLAINTIFF complained to Human Resources representative, Zulma Rivera, and claimed, *inter alia*, that he felt he was being discriminated/retaliated against based on his national origin and race/color.

87.    On or about April 24, 2018, PLAINTIFF met with Human Resources, where another employee, Dalia Ferguson, confirmed to Human Resources that Defendant ETHIER had in fact referred to PLAINTIFF as a "***Haitian Motherfucker***."

88.    PLAINTIFF'S complaint and supporting information was brought to the attention of DEFENDANT ETHIER.

89.    Nevertheless, DEFENDANT ETHIER was allowed to continue to supervise PLAINTIFF and on April 28, 2018, just four days after PLAINTIFF'S complaint to Human Resources, ETHIER immediately retaliated against PLAINTIFF by changing his schedule to work to Thursday through Monday - all weekend long.

90.     Up to this point, PLAINTIFF always had a weekend day off since the day that PLAINTIFF began working at WCS/NYA in 2015. There was no non-retaliatory reason to alter PLAINTIFF'S schedule.

91.     In order to annoy PLAINTIFF, DEFENDANT ETHIER summarily changed PLAINTIFF'S work schedule so that PLAINTIFF would not receive any weekend days off.

92.     On information and belief, Defendant ETHIER knew that PLAINTIFF attended classes and church on the weekend and intentionally changed PLAINTIFF'S schedule to interfere with PLAINTIFF'S classes and church attendance and to further harass and annoy PLAINTIFF.

93.     DEFENDANT ETHIER took no such action against PLAINTIFF until PLAINTIFF made a formal complaint of discrimination to Human Resources.

94.     On information and belief, all other employees (none of which were Haitian) had at least one scheduled weekend day off.

95.     Also, due to PLAINTIFF'S seniority, it is customary that employees with less seniority would be scheduled to work weekends. Nevertheless, PLAINTIFF was unfairly saddled with this weekend schedule.

96.     In May 2018, PLAINTIFF applied for a promotion.

97.     DEFENDANTS denied his application, despite his qualifications and seniority, and instead promoted a Caucasian Employee with less seniority, who PLAINTIFF trained.

98.     At this time, DEFENDANTS still refused to correct PLAINTIFF'S title and return his compensation to the correct rate.

**D. Plaintiff Complained to The New York City Commission on**
**Human Rights And Defendants Continued Their Retaliation.**

99.  PLAINTIFF filed a charge with the New York City Commission on Human Rights in May 2018.

100.  Prior to this filing, PLAINTIFF filed other complaints/Charges against DEFENDANT with outside administrative agencies - all of which DEFENDANTS were aware.

101.  After filing the charge, DEFENDANTS continued to retaliate against PLAINTIFF.

102.  Immediately thereafter, DEFENDANT ETHIER attempted to write-up PLAINTIFF for unreasonable reasons and his retaliatory actions were blocked by the union on PLAINTIFF'S behalf.

103.  In June 2018, PLAINTIFF had an allergic reaction to mold and/or harmful gasses in an area where PLAINTIFF was assigned to work without adequate protective equipment, by DEFENDANT ETHIER.

104.  As a result, PLAINTIFF fell-ill an was even caused to report to the hospital for medical treatment due to breathing problems.

105.  Though PLAINTIFF'S direct manager moved PLAINTIFF from this location for his safety and due to his allergic reaction, DEFENDANT ETHIER forced PLAINTIFF to return to work in that same dangerous area - in further retaliation.

106.  In July of 2018, another supervisor maintainer position became available.

107.  Though PLAINTIFF was qualified, had skills, certifications and seniority over other candidates, DEFENDANT ETHIER told PLAINTIFF'S manager (David) to not consider PLAINTIFF for the position/promotion - in further retaliation.

108.    DEFENDANT ETHIER also told PLAINTIFF'S manager that ETHIER did not want PLAINTIFF on his team if PLAINTIFF was promoted - in further retaliation.

109.    In October 2018, DEFENDANT ETHIER denied PLAINTIFF a promotion for the supervisor maintainer position, despite PLAINTIFF'S qualification and experience.

110.    Instead, DEFENDANT ETHIER promoted a Caucasian employee (Anton), who recently started working in PLAINTIFF'S department and had less experience than PLAINTIFF. Indeed, PLAINTIFF trained Anton in his duties and responsibilities.

111.    Due to the retaliatory/discriminatory actions of DEFENDANT ETHIER, Anton was promoted over PLAINTIFF - in further retaliation.

112.    PLAINTIFF was discriminated against based on his national origin and race/color by DEFENDANTS.

113.    DEFENDANTS had no legitimate business purpose to demote PLAINTIFF and reduce his compensation.

114.    DEFENDANTS demoted PLAINTIFF for no reason other than discriminatory animus by the supervisor.

115.    PLAINTIFF suffered a reduction in his compensation due to this demotion.

116.    To date, no action has been taken against DEFENDANT ETHIER in response to PLAINTIFF'S complaint(s). As a result, DEFENDANT ETHIER continues to retaliate against PLAINTIFF with impunity.

117.    DEFENDANT ETHIER subjected PLAINTIFF to an ongoing and continuous hostile work environment permeated with discriminatory comments, insults, bullying, ridicule, adverse employment actions, summary demotions, summary schedule changes, refusals to promote, retaliatory conduct that affected PLAINTIFF'S health, etc.

118.    DEFENDANT ETHIER'S conduct is affecting PLAINTIFF'S work environment and adversely affecting PLAINTIFF'S ability to do his job.

119.    No similarly-situated non-Haitian employees at WCS/NYA, who did not complain about discrimination, are experiencing the same discriminatory and/or retaliatory conduct as PLAINTIFF.

120.    As a result of the acts and conduct complained of herein, PLAINTIFF suffered, and continues to suffer, stress, ongoing humiliation, intimidation, ridicule, fear, anxiety, adverse employment actions, special damages, loss of employment, financial harm, loss of employment opportunities, loss of benefits, and loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

121.    DEFENDANTS acted maliciously, willfully, outrageously, and with full knowledge of the law.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
*(Against Defendants WCS and NYA)*

85.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

86.    This claim is authorized and instituted pursuant to the provisions of the Civil Rights Act of 1964, as amended, 42 U.S.C., §§2000e *et seq*., for relief based upon the unlawful employment practices of Defendants WILDLIFE CONSERVATION SOCIETY and/or NEW YORK AQUARIUM. PLAINTIFF complains of Corporate DEFENDANTS' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race/color and national origin.

17

87.    Defendants WCS and NYA engaged in unlawful employment practices prohibited by
Title VII, by discriminating against PLAINTIFF because of his race/color and national
origin.

88.    PLAINTIFF was subjected to discrimination, hostile work environment, and retaliation at
WCS and NYA.

89.    Plaintiff was subjected to a hostile work environment and/or a workplace that was
permeated with racial bias, racially motivated insults, racial animus, and derogatory
racially motivated language PLAINTIFF due to his race/color and national origin.

90.    At all times, DEFENDANT ETHIER, and Operations Manager at/for WSC and NYA
utilized his position, authority, status and power to subject PLAINTIFF to ongoing and
continuous unlawful, discriminatory and retaliatory conduct.

91.    PLAINTIFF complained about the discriminatory abuse he faced at the hands of his
Manager and said complaint(s) were ignored. Instead, PLAINTIFF was further subjected
to a hostile working environment.

92.    PLAINTIFF was then retaliated against for engaging in the above-describe protected
activity and for seeking equal treatment under the laws of the state as well as under the
laws, rules, procedures, manuals, and promises of WCS and NYA.

93.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss
of income, economic hardship, loss of employment, pecuniary losses, emotional pain,
suffering, inconvenience, special damages, loss of enjoyment of life and other non-
pecuniary losses.

94.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### *(Against Defendants WCS and NYA)*

95.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this Complaint.

96.    The <u>Civil Rights Act of 1964</u>, as amended, 42 U.S.C., §2000e-3(a) provides that it shall

be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because he
> has opposed any practice made an unlawful employment practice
> by this subchapter, or because he has made a charge, testified,
> assisted or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

97.    DEFENDANTS WCS and NYA engaged in unlawful employment practice prohibited by

<u>Title VII</u> by discriminating against PLAINTIFF with respect to the terms, conditions or

privileges of employment because of his opposition to the unlawful employment practices

of DEFENDANTS.

98.    PLAINTIFF continually and repeatedly complained to DEFENDANT EITHER, his

Union, to DEFENDANTS WCS and NYA directly, and then to the New York City

Commission on Human Rights about the continuous and ongoing discriminatory abuse he

faced at the hands of his manager, DEFENDANT ETHIER.

99.    Said complaints were futile and/or ignored.

100.    Instead, PLAINTIFF was further subjected to further adverse employment actions,

including but not limited to demotions, failure/refusals to promote, abusive conduct that

affected PLAINTIFF'S health and well-being in retaliation for engaging in the above-

describe protected activity and for seeking equal treatment under City, State and Federal

laws as well as under the laws, rules, procedures, manuals, and promises of WILDLIFE

CONSERVATION SOCIETY and NEW YORK AQUARIUM.

101.  As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, loss of employment, pecuniary losses, economic hardship, emotional pain, suffering, inconvenience, special damages, loss of enjoyment of life and other non-pecuniary losses.

102.  PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

**AS A THIRD CAUSE OF ACTION**
<u>**FOR DISCRIMINATION UNDER 42 U.S.C. § 1981 (As Amended)**</u>
(*Against All DEFENDANTS Collectively and Individually*)

103.  PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

104.  <u>42 U.S.C</u>. § 1981 states in relevant part as follows:

> (a)  Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b)  "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

105.  PLAINTIFF, who is Haitian with a dark complexion, was discriminated against because of his race/color as provided under <u>42 U.S.C</u>. § 1981 and has suffered damages as set forth herein.

106.    PLAINTIFF was effectively denied full and equal benefit of all laws and immunities as an employee of Defendants WCS and NYA, due in part to his race/color and national origin.

107.    PLAINTIFF was subjected to a racially hostile work environment and acts of unlawful discrimination and retaliation at WCS and NYA, by his managers, including but not limited to, DEFENDANT ETHIER.

108.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitians.

109.    PLAINTIFF complained to DEFENDANTS' Human Resources about the discriminatory abuse he faced at the hands of his boss, including but not limited to, DEFENDANT ETHIER, and PLAINTIFF was retaliated against for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANTS WCS and NYA.

110.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

111.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER 42 U.S.C. §1981 (As Amended)
### *(Against All DEFENDANTS Collectively and Individually)*

112.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

113.    By the acts and practices described above, DEFENDANTS retaliated against PLAINTIFF for his opposition to unlawful discrimination under 42 U.S.C. §1981.

114.    DEFENDANTS acted with malice and/or reckless indifference to PLAINTIFF'S statutorily protected rights.

115.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitian employees and persons of color.

116.    Once PLAINTIFF complained to DEFENDANTS' Human Resources about discriminatory abuse he faced at the hands of his bosses and managers, including but not limited to, DEFENDANT ETHIER, was immediately retaliated against.

117.    DEFENDANTS refused to investigate and/or act to cease the known and unlawful discriminatory conduct and hostile work environment against PLAINTIFF.

118.    PLAINTIFF was retaliated against for engaging in the above-described protected activity and for seeking equal treatment under Federal, State and City laws as well as under the laws, rules, procedures, manuals, and promises of DEFENDANTS WCS and/or NYA.

119.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

120.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

**AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE HUMAN RIGHTS LAW**
*(Against Defendants WCS and NYA)*

121.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs

22

of this Complaint.

122.   <u>New York State Executive Law</u> §296 provides that:

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

123.   Defendants WILDLIFE CONSERVATION SOCIETY have engaged in an unlawful discriminatory practice by discriminating against PLAINTIFF because of his race/color and national origin.

124.   PLAINTIFF was subjected to unlawful discrimination and retaliation at WILDLIFE CONSERVATION SOCIETY by his managers and supervisors, in the presence of and/or with the knowledge of DEFENDANT ETHIER.

125.   PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitian employees and people of color and directly to PLAINTIFF due to his national origin, race and color.

126.   As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

127.   PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

### AS A SIXTH CAUSE OF ACTION FOR RETALIATION
### UNDER NEW YORK STATE EXECUTIVE LAW
### (*Against Defendants WCS and NYA*)

128.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

129.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

130.    DEFENDANT ETHIER engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against PLAINTIFF because of PLAINTIFF's opposition to the unlawful employment practices of PLAINTIFF's employer.

131.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitians and people of color and directly to PLAINTIFF due to his national origin.

132.    Once PLAINTIFF complained to DEFENDANTS' Human Resources about the discriminatory abuse he faced at the hands of his managers and bosses, PLAINTIFF was retaliated against for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of WILDLIFE CONSERVATION SOCIETY.

133.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless

and until this Court grants relief.

134.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION / RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW
#### (*"Aider and Abettor" Liability Against INDIVIDUAL DEFENDANT ETHIER*)

135.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

136.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

137.    Individual Defendant ETHIER engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct and for also allowing others at WILDLIFE CONSERVATION SOCIETY, employees and non-employees, to add to the racially a gender-based hostile work environment.

138.    PLAINTIFF was subjected to acts of unlawful discrimination and retaliation at WILDLIFE CONSERVATION SOCIETY in the presence of and/or with the knowledge and participation by DEFENDANT ETHIER.

139.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitians and people of color, and directly against PLAINTIFF due to his national origin.

140.    Once PLAINTIFF complained to DEFENDANTS' Human Resources of the

discriminatory abuse he faced at the hands of his bosses and managers, PLAINTIFF was retaliated against by DEFENDANTS for engaging in the above-described protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of WILDLIFE CONSERVATION SOCIETY.

141.    Individual Defendant ETHIER herein is liable for aiding and abetting the discriminatory and/or retaliatory conduct about which PLAINTIFF complains herein.

142.    DEFENDANT ETHIER utilized his position, status, power, authorities and was otherwise acting in furtherance of his duties as a Manager at DEFENDANTS WCS and/or NYA.

143.    But for DEFENDANT ETHIER'S management position at DEFENDANT WCS and NYA, DEFENDANT ETHIER would not have been able to subject PLAINTIFF to the above alleged ongoing, continuous and systematic discriminatory/retaliatory hostile work environment.

144.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

145.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

### AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION
### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW
#### (*Against Defendants WCS and NYA*)

146.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

147.    The <u>New York City Administrative Code</u> §8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived . . . race/color . . . gender . . . to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

148.    DEFENDANTS engaged in an unlawful discriminatory practice in violation of <u>New York City Administrative Code</u> §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against PLAINTIFF because of his race/color and national origin.

149.    PLAINTIFF was effectively denied full and equal benefit of all laws and proceedings as an employee of Defendant WILDLIFE CONSERVATION SOCIETY.

150.    PLAINTIFF was subjected to a racially hostile work environment and acts of unlawful discrimination and retaliation at WILDLIFE CONSERVATION SOCIETY by his manager and/or supervisor, DEFENDANT ETHIER.

151.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitians, people of color, and directly against PLAINTIFF due to his national origin.

152.    PLAINTIFF complained to DEFENDANTS' Human Resources of the discriminatory abuse he faced at the hands of his boss and manager, and PLAINTIFF was retaliated against for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANTS WCS and NYA.

27

153.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

154.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

**AS A NINTH CAUSE OF ACTION FOR RETALIATION**
**UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**
(*Against DEFENDANT WCS and NYA*)

155.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

156.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

157.    DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against PLAINTIFF because of PLAINTIFF's opposition to the unlawful employment practices of DEFENDANTS.

158.    DEFENDANTS engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against PLAINTIFF because of PLAINTIFF's opposition to the unlawful employment practices of PLAINTIFF's employer.

159.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitians and persons of color, as well as against PLAINTIFF due to his race/color and/or national origin.

160.    Once PLAINTIFF complained to DEFENDANTS' Human Resources of the

28

discriminatory abuse he faced at the hands of his bosses and managers, PLAINTIFF was retaliated against for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANTS WCS and NYA.

161.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress.

162.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**
(*Aider and Abettor Liability Against INDIVIDUAL DEFENDANT ETHIER*)

163.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

164.    The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to **aid, abet**, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

165.    DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

166.    Defendant ETHIER is liable individually for aiding in the discriminatory conduct against PLAINTIFF as outlined above.

167.    PLAINTIFF was subjected to acts of unlawful discrimination and retaliation at WILDLIFE CONSERVATION SOCIETY by his boss and manager DEFENDANT ETHIER.

168.    PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against Haitians and people of color.

169.    Once PLAINTIFF complained to DEFENDANTS (collectively and individually) about the discriminatory abuse he faced at the hands of his boss and manager PLAINTIFF was retaliated against for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DEFENDANT WCS and NYA.

170.    Individual Defendant ETHIER is liable for aiding and abetting the discriminatory and/or retaliatory conduct about which PLAINTIFF complains herein.

171.    DEFENDANT ETHIER utilized his position, status, power, authorities and was otherwise acting in furtherance of his duties as a Manager at DEFENDANTS WCS and/or NYA.

172.    But for DEFENDANT ETHIER'S management position at DEFENDANT WCS and NYA, DEFENDANT ETHIER would not have been able to subject PLAINTIFF to the above alleged ongoing, continuous and systematic discriminatory/retaliatory hostile work environment.

173.    As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

174.    PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

**AS AN ELEVENTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
(Vicarious Liability Against WILDLIFE CONSERVATION SOCIETY)**

175.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs

of this Complaint.

176.    Under the New York City Administrative Code §8-107(13):

> Employer liability for discriminatory conduct by employee, agent or independent contractor.
>
> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent, which is in violation of any provision of this section other than subdivisions one and two of this section.
>
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: [1] the employee or agent exercised managerial or supervisory responsibility; or [2] the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or [3] the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

177.    Defendant WILDLIFE CONSERVATION SOCIETY is vicariously liable for the

discriminatory, retaliatory, actions taken against PLAINTIFF as outlined above.

178.    DEFENDANT ETHIER herein was acting pursuant to his/her respective position,

authority as an agent, officer, manager, supervisor and/or representative of

DEFENDANTS WCS and NYA.

179.    Defendant WILDLIFE CONSERVATION SOCIETY knew or should have known of

Defendant ETHIER's discriminatory and retaliatory conduct and failed to exercise reasonable diligence to prevent such conduct.

180.     DEFENDANT ETHIER utilized his position, status, power, authorities and was otherwise acting in furtherance of his duties as a Manager at DEFENDANTS WCS and/or NYA.

181.     But for DEFENDANT ETHIER'S management position at DEFENDANT WCS and NYA, DEFENDANT ETHIER would not have been able to subject PLAINTIFF to the above alleged ongoing, continuous and systematic discriminatory/retaliatory hostile work environment.

182.     As a result of DEFENDANTS' discriminatory acts, PLAINTIFF has suffered and will continue to suffer irreparable injury, loss of employment, loss of income, inconvenience, humiliation, special damages, emotional distress, and other compensable damage unless and until this Court grants relief.

183.     PLAINTIFF is entitled to the maximum amount allowed under this law/statute.

## JURY DEMAND

184.     Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.§1981, Title VII, the New York State Human Rights Law, and the New York City Human Rights Law in that Defendants discriminated against Plaintiff on the basis of his race/color and national origin and retaliated against Plaintiff for complaining of discrimination and objecting to Defendants' practices;

B.     Awarding damages to Plaintiff for all lost wages and benefits resulting from

Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.    Awarding Plaintiff punitive damages;

E.    Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
          March 18, 2019

                                        PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC

                              By:  _____*/S/*_____

                                        Gregory Calliste, Jr.
                                        Siobhan Klassen
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 620
                                        New York, New York 10006
                                        (212) 248-7431