UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                            :

RUCALDEAU RENONDEAU,            :

                                 :

                        Plaintiff,    :

                                 :                19-CV-2415 (VSB)

               - against -        :

                                 :            **OPINION & ORDER**

WILDLIFE CONSERVATION SOCIETY,    :
NEW YORK AQUARIUM, and DENNIS    :
ETHIER, *in his individual and*          :
*official capacities*,                 :

                                 :

                    Defendants.  :

                                 :
----------------------------------------------------------X

Appearances:

Alexandria Jean-Pierre
New York, NY

Gregory Calliste, Jr.
Phillips and Associates
New York, NY
*Counsel for Plaintiff*

Oscar Michelen
Cuomo LLC
Mineola, NY

Frederick Lawrence Sullivan
Sullivan, Hayes & Quinn, LLC
New York, NY

Patrick W. McGinley
Finder, Cuomo & Adler, LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Rucaldeau Renondeau brings claims against the Wildlife Conservation Society ("WCS"), the New York Aquarium ("NYA"), and Dennis Ethier, Operations Manager for WCS and NYA, for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("§ 1981"); the New York State Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL").

Before me is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Because I conclude that no reasonable juror could find in Plaintiff's favor on his Title VII, § 1981, and NYSHRL discrimination claims, those claims are dismissed. However, I conclude that a reasonable juror could find that Defendants discriminated against Plaintiff in violation of the NYCHRL and retaliated against him in violation of Title VII, § 1981, NYSHRL, and NYCHRL.  Accordingly, I deny summary judgment as to those claims.  For these reasons, the motion for summary judgment is GRANTED in part and DENIED in part.

## I.     **Factual Background**[1]

Plaintiff is a Black Haitian man.  (Pl. 56.1 ¶ 100; Def. Response 56.1 ¶ 49.)[2]  Plaintiff began working at NYA on or about March 8, 2011 as a "Provisional Supervising Maintainer." (Pl. 56.1  ¶ 1.)  WCS is a not-for-profit corporation that engages in wildlife conservation efforts.

[1] This section is drawn from the various submissions of both parties in order to provide background and context for Defendants' motion and is not intended as a recitation of all material undisputed facts.

[2] "Pl. 56.1" refers to Plaintiff's Response in Opposition to Defendants Local Rule 56.1 Statement of Undisputed Facts & Plaintiff's Counterstatement of Undisputed Facts filed on March 5, 2021.  (Doc. 54.)  I have also considered Defendants' Response to Plaintiff's Response to Defendants' Rule 56.1 Statement & To Plaintiff's Counterstatement of Facts.  (Doc. 58 ("Def. Response 56.1").)

(Compl. ¶ 15.)[3]  WCS owns, operates, controls, manages, and/or supervises multiple parks throughout New York State, including the NYA.  (*Id*.)  Throughout Plaintiff's employment, Ethier was in charge of evaluating the work that needed to be done and creating work orders, which were assigned to maintainers.  (Pl. 56.1 ¶ 20.)  At all times, Plaintiff was represented by a labor union, which had a collective bargaining agreement with WCS.  (*Id*. ¶ 4.)

On April 19, 2013, Plaintiff was notified that his position as Provisional Supervising Maintainer had been eliminated due to the impact of Hurricane Sandy, (*id*. ¶ 8), and Plaintiff was offered a position as a Maintainer at the Central Park Zoo, which he accepted, (*id*. ¶ 23).  In October 2013, Plaintiff was "recalled to WCS'[s] operation at the New York Aquarium as a Provisional Supervising Maintainer filling in for WCS employee Bill Sheehan."  (*Id*. ¶ 25.)  However, "[i]n March 2014, Plaintiff was notified by memo that his position at NYA was eliminated, once again due to [Hurricane Sandy's] impact", (*id*. ¶ 27), and "was offered and accepted a transfer to the WCS'[s] operation at the Bronx Zoo as a Maintainer," (*id*. ¶ 29).  On June 7, 2015, Plaintiff returned to NYA as a Maintainer.  (*Id*. ¶ 31.)  "On February 11, 2017, Plaintiff was notified that a clerical error was made when he completed service as a Provisional Supervising Maintainer in October 2015" and "that his salary should have been reduced as of October 27, 2015 to Maintainer compensation."  (*Id*. ¶ 33.)  Ethier caught this error during a routine budget review.  (*Id*. ¶ 34.)  Plaintiff submitted a complaint to his union and the National Labor Relations Board ("NLRB") regarding the pay cut.  (*Id*. ¶ 37.)  About a month later, Plaintiff submitted another complaint to the NLRB, citing concerns over "discrimination," "retaliation," and "harassment" by Ethier.  (*Id*. ¶ 39.)  The NLRB dismissed this complaint.  (*Id*. ¶ 40.)  Plaintiff then filed a grievance with his union for breach of contract for wrongful

---

[3] "Compl." refers to Plaintiff's complaint filed on March 18, 2019.  (Doc. 1.)

demotion and for decreasing his salary. (*Id.* ¶ 41.) Plaintiff continued through the grievance process, and the issue was eventually brought before an internal WCS grievance panel. (*Id.* ¶¶ 41–46.) The panel determined that Plaintiff was entitled to his original title and pay. (*Id.* ¶ 47.) Accordingly, Plaintiff's title was restored, and he received full back pay. (*Id.* ¶ 48.)

On or about April 4, 2018, Plaintiff complained to Zulma Rivera, a WCS Human Resources Representative, about discrimination and retaliation perpetrated by his employer and Ethier. (*Id.* ¶ 49.) On April 11, 2018, Plaintiff was notified that his shift was changed so that he no longer had his requested weekend days off. (*Id.* ¶ 123.) All other maintainers, including those junior to Plaintiff, either kept their schedules or kept a weekend day off. (*Id.*; Castille Decl. Ex. J.) Plaintiff was the most senior maintainer, and the only Black and Haitian maintainer, to not have a weekend day off. (*Id.*)

Plaintiff also complained that he was the only WCS employee or supervisor maintainer tasked with removing insulation from the facilities that housed the Sea Cliffs exhibit ("Sea Cliffs"), which subsequently made him ill. (*Id.* ¶¶ 72, 73, 119.) David Figueroa, the Facilities Manager on duty at the time, recognized that the insulation removal was posing risks to Plaintiff's health and replaced him with another employee. (*Id.*)

On April 12, 2018, Plaintiff submitted another complaint to Rivera about the shift change. (*Id.* ¶ 51.) Rivera held a meeting with Plaintiff on or about April 24, 2018, at which Plaintiff told Rivera that Ethier had referred to him as "Haitian motherfucker" at a holiday party in 2015. (*Id.* ¶¶ 52–53.) Plaintiff had never filed a complaint with Human Resources about this remark before this meeting. (*Id.* ¶ 54.) Rivera spoke to Ethier about the comment, and Ethier indicated there was no racial motivation behind it and that he meant it as a congratulatory remark for winning a raffle prize. (*Id.* ¶ 60.) Rivera determined that, based on the context and single

occurrence, the remark did not constitute discrimination against Plaintiff. (*Id*. ¶ 62.) After a formal investigation into Plaintiff's complaint about the "Haitian motherfucker" remark, WCS determined that the comment was "an isolated, one-time remark," "not accompanied by an expression of hostility or racial animus," made "in a setting of a party," and had "not been repeated since it occurred in 2015." (*Id*. ¶¶ 88–92.) WCS determined that there was "no evidence of discrimination or retaliation towards [Plaintiff]." (*Id*. ¶ 93.)

On other occasions, beginning in 2015 or 2016, Ethier referred to Plaintiff as "Haitian sensation." (*Id*. ¶¶ 63–64.) Ethier testified that he said, "We get nothing but the best from our Haitian Sensation" after learning Plaintiff did an excellent job fixing a pool liner. (*Id*. ¶ 65.) Ethier also testified to using the phrase as a compliment for Plaintiff during an after-work volleyball league. (*Id*.) He perceived Plaintiff as enjoying the comment. (*Id*.) Figueroa confirmed that the term was used in a joking manner regarding Plaintiff's physical fitness and prowess and that Plaintiff seemed to enjoy it. (*Id*. ¶¶ 66, 68.) Plaintiff complained about these remarks in a complaint to the City Human Rights Board, which was ultimately administratively closed. (*Id*. ¶¶ 106, 111.)

In or around July 2018, a Supervisor Maintainer position became available at NYA. (*Id*. ¶ 94.) Ethier told Figueroa and Edward Perri, who were conducting the interviews, that he did not think Plaintiff was qualified for the position. (*Id*. ¶ 97.) Figueroa did not agree with Ethier and interviewed Plaintiff despite Ethier's comment. (*Id*.) Figueroa and Perri reported that Plaintiff did not answer any of the situational awareness tests from the perspective of a supervisor, showed a poor level of practical knowledge, and demonstrated very poor attitude to the interviewers. (*Id*. ¶ 98.) Plaintiff scored the lowest of all the candidates interviewed and was not hired. (*Id*. ¶ 99.)

Plaintiff made additional complaints to the New York State Division of Human Rights and the Equal Employment Opportunity Commission for discrimination, retaliation, and harassment.  (*Id*. ¶¶ 74, 76.)  Both complaints were denied for lack of probable cause.  (*Id*. ¶¶ 75, 77.)  On May 11, 2018, Plaintiff complained by email to his supervisor at the time, Edward Perri, about experiencing retaliation for his former complaint to Rivera and their subsequent meeting together.  (*Id*. ¶ 71.)  Plaintiff made a complaint to Rivera about retaliation from Perri that same day.  (*Id*. ¶ 78.)  On May 19, 2018, Plaintiff made another complaint to Rivera about harassment and retaliation.  (*Id*. ¶ 85.)

## II.   Procedural History

Plaintiff initiated this action before the late Judge William H. Pauley III by filing the Complaint on March 18, 2019.  (Compl.)  The Complaint alleges discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL against Defendants WCS and NYA; discrimination and retaliation under § 1981 against all Defendants; NYSHRL and NYCHRL discrimination and retaliation against Defendant Ethier based on an aider and abettor theory of liability; and NYCHRL discrimination against WCS based on vicarious liability for Ethier's actions.  (*Id*.)  All Defendants filed their answer on May 21, 2019.  (Doc. 13.)

On January 28, 2021, Defendants filed their motion for summary judgment, (Doc. 45), a supporting memorandum of law, (Doc. 47 ("MSJ")), the affirmation of Oscar Michelen, (Doc. 46), and their Rule 56.1 Statement, (Doc. 48 ("Def. 56.1")).  On March 5, 2021, Plaintiff filed an opposition memorandum of law, (Doc. 52 ("Opp.")), the declaration of Gregory Castille, (Doc. 53 ("Castille Decl.")), and Plaintiff's Response in Opposition to Defendants Local Rule 56.1 Statement of Undisputed Facts & Plaintiff's Counterstatement of Undisputed Facts, (Pl. 56.1).

On March 19, 2021, Defendants filed a reply memorandum of law.  (Doc. 59.)  On July 28,

2021, following the death of Judge Pauley, this case was reassigned to me.  (*See* Doc. 62.)

**III.**   **Legal Standard**

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v.*

*Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address

another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV.   Discussion

### A.  *Discrimination*

#### 1.  Applicable Law

"Discrimination claims under Title VII, [§ 1981], and the NYSHRL are analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Braunstein v. Sahara Plaza, LLC*, 16-CV-8879 (VSB), 2021 WL 2650369, at *8 (S.D.N.Y. June 28, 2021) (citing *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014)); *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (discussing § 1981 claims).  First, the employee bears the burden of setting forth a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  To set forth a prima facie case of discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she was

qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Tubo v. Orange Reg'l Med. Ctr.*, 690 Fed. App'x 736, 738 (2d Cir. 2017) (citing *McDonnell Douglas*, 411 U.S. at 802). The Second Circuit has emphasized that the "burden of establishing a *prima facie* case is *de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001) (collecting cases).

An adverse employment action is defined as "a "materially adverse change" in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal citation and quotation marks omitted). "Employment actions that [the Second Circuit has] deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). Courts in the Second Circuit have held that threats of disciplinary action and excessive scrutiny, without additional negative consequences, do not rise to the level of adverse employment actions. *See, e.g.*, *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (collecting cases and noting that "[w]hile plaintiff may have been reprimanded repeatedly for his lateness, nothing came of these reprimands"), *aff'd*, 51 F. App'x 55 (2d Cir. 2002); *see also Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]n employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."). Claims for failure to promote are also well-recognized. *See, e.g.*, *Mirasol v. Gutierrez*, 05-CV-6368

(DC), 2006 WL 871028, at *4 (S.D.N.Y. Apr. 5, 2006) ("[A] single failure to promote is

actionable even if no other discriminatory act has occurred." (footnote omitted) (citing *Nat'l R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002)); *Emengo v. Stark*, 774 F. App'x 26,

29 (2d Cir. 2019).

"An inference of discrimination can arise from circumstances including, but not limited

to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its

invidious comments about others in the employee's protected group; or the more favorable

treatment of employees not in the protected group; or the sequence of events leading to the

plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (citation and internal quotation marks

omitted); *see also Graham*, 230 F.3d at 39 ("A plaintiff may raise such an inference by showing

that the employer subjected him to disparate treatment, that is, treated him less favorably than a

similarly situated employee outside his protected group." (citations omitted)).

If a plaintiff successfully presents a prima facie case of discrimination, the burden shifts

to the defendant to proffer "legitimate and non-discriminatory reasons for the adverse

employment action." *Abdu-Brisson*, 239 F.3d at 468.  The defendant's burden at this stage is

"light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).  This burden "is one

of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509

U.S. 502, 509 (1993)).

Once a defendant proffers a legitimate, non-discriminatory reason for the adverse

employment action, the burden shifts back to the plaintiff to demonstrate, by a preponderance of

the evidence, either that the proffered reason is a pretext for discrimination, *see United States v.*

*City of New York*, 717 F.3d 72, 103 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d

Cir. 2008), or that "the employer's proffered reasons were . . . not the only reasons and that the

prohibited factor was at least one of the motivating factors," *Holcomb*, 521 F.3d at 138 (citation

and internal quotation marks omitted)); *see also Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134,

156 (2d Cir. 2010) ("[A] plaintiff need only show that the defendant was in fact motivated at

least in part by the prohibited discriminatory animus."). "A plaintiff may demonstrate pretext by

showing 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's

proffered legitimate, nonretaliatory reasons for its action.'" *Gokhberg v. PNC Bank, Nat'l Ass'n*,

17-CV-00276 (DLI) (VMS), 2021 WL 421993, at *7 (E.D.N.Y. Jan. 6, 2021) (quoting *Kwan v.

Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

To defeat summary judgment, "the plaintiff's admissible evidence must show

circumstances that would be sufficient to permit a rational finder of fact to infer that the

defendant's employment decision was more likely than not based in whole or in part on

discrimination." *Stern v. Trs. of Columbia Univ. in the City of N.Y.*, 131 F.3d 305, 312 (2d Cir.

1997). "To get to the jury, it is not enough to disbelieve the employer; the factfinder must also

believe the plaintiff's explanation of intentional discrimination." *Weinstock v. Columbia Univ.*,

224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted); *see also Schnabel v.

Abramson*, 232 F.3d 83, 90–91 (2d Cir. 2000) (affirming summary judgment in favor of

defendant where plaintiff failed to present evidence upon which a reasonable jury could conclude

that age was a "determinative factor" in adverse employment action).

### 2.  Application

Plaintiff satisfies the first prong of the *McDonnell Douglas* farmwork—i.e., that he

belongs to a protected class—because he is Haitian and Black.  (Pl. 56.1 ¶¶ 1, 17, 50, 100.)  With

respect to the second prong, Defendants do not meaningfully dispute that Plaintiff was qualified

for the job, and I also conclude that he was qualified for the position in question.  All that is

required at this stage is "that the plaintiff establish basic eligibility for the position at issue, and

not the greater showing that he satisfies the employer."  *Kerman-Mastour v. Fin. Indus.*

*Regulatory Auth.*, 814 F. Supp. 2d 355, 367–68 (S.D.N.Y. 2011) (citing *Owens v. N.Y.C.*

*Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)).  Here, Plaintiff demonstrates that he had been

working for WCS since March 2011.  (Pl. 56.1 ¶¶ 2, 5.)  Prior to the events at issue in this

litigation, Plaintiff had not received any infractions.  (*Id*.)  Indeed, Plaintiff's recent manager,

Figueroa, referred to Plaintiff as a "great employee," a mark Plaintiff earned through his

punctuality, willingness to work overtime, and training efforts with other employees.  (Castille

Decl. Ex. D., 7–21.)

        The third prong under the *McDonnell Douglas* framework requires Plaintiff to show that

he suffered an "adverse employment action."  *Tubo*, 690 Fed. App'x at 738.  To make that

showing, Plaintiff points to (a) the unfair and uneven distribution of work, (b) his demotion and

reduction in salary, (c) Defendants' refusal to promote him, and (d) shift changes and denials of

schedule accommodations.  (Opp., at 13.)  Finally, the fourth prong under *McDonnell Douglas*

requires Plaintiff to establish that any adverse employment action occurred under circumstances

giving rise to an inference of discrimination.  *Tubo*, 690 Fed. App'x at 738.  I will address each

such action in turn.

### a. Distribution of Work

        A heavier-than-normal workload can constitute an adverse employment action.  *See*

*Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004) (affirming the district court's

conclusion that "the assignment of a disproportionately heavy workload" was an adverse

employment action).  "Disproportionately heavy workload[s]" may be indicative of an adverse

employment action "if the additional work significantly changed the employee's responsibilities so as to diminish that worker's role or status, or exposed the worker to dangerous or extreme conditions not appropriate to her job classification." *Young v. Rogers & Wells LLP*, No. 00-CV-8019 (GEL), 2002 WL 31496205, at *5 (S.D.N.Y. Nov. 6, 2002).

Here, Plaintiff alleges that Defendants discriminated against him by assigning him to remove insulation at the Sea Cliffs exhibit, an "inherently dangerous task." (Pl. 56.1 ¶¶ 126–38; Opp., at 18.) While working on this exhibit, Plaintiff suffered "severe allergic reactions (tongue spotting, skin boils, difficulty breathing, and hospitalizations," and contends that Ethier— knowing he was experiencing health problems from the project—forced him back to work. (Pl. 56.1 ¶ 137; Opp., at 18.) Plaintiff also argues that no other maintainers were forced to undertake that dangerous task. (*Id*.)

This argument, however, is belied by the record and has no merit. At his deposition, Ethier testified that there were no other maintainers in the specific building that housed the Sea Cliffs exhibit, but other maintainers were "doing installation removal in two other pump houses on the property." (Castille Decl. Ex. B, 184:14-24.) Moreover, Plaintiff testified that he was instructed to stop removing insulation at the Sea Cliffs exhibit because another worker was going to replace him and finish the project. (*Id*. Ex. A, 143:19-145:13.) Because other employees, including those at Plaintiff's level, performed the same tasks, no reasonable juror could find that Plaintiff's assignment to the Sea Cliffs exhibit "significantly changed [his] responsibilities" or "exposed [him] to dangerous or extreme conditions not appropriate to [his] job classification". *Rogers & Wells LLP*, 2002 WL 31496205, at *5. Accordingly, this assignment cannot constitute an adverse employment action.

Even if Plaintiff could demonstrate that his work at the Sea Cliffs exhibit constituted an adverse employment action, he would still have to demonstrate that the circumstances gave rise to an inference of discrimination.  *See Tubo*, 690 Fed. App'x at 738.  Plaintiff points to two situations that he argues give rise to such an inference.  First, Plaintiff contends that, after he won a raffle prize at the WCS holiday party in 2015, Ethier referred to him as a "Haitian motherfucker."  (Pl. 56.1 ¶¶ 53, 58.)  Second, Plaintiff points to the fact that Ethier referred to him as a "Haitian sensation" throughout his employment, (Pl. 56.1 ¶¶ 106, 109, 112).

"Verbal comments" can give rise to an inference of discrimination if "a nexus exists between the allegedly discriminatory statements" and the adverse employment action.  *Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 636 (S.D.N.Y. 2005).  However, "stray remarks" by decisionmakers do "not constitute evidence of discrimination."  *Id*. at 637.  "In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative stray remark, a court should consider the following factors:  (1) who made the remark, *i.e.*, a decision-maker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision-making process."  *Id.* (internal quotation marks omitted).

Regarding the first factor, Ethier supervised Plaintiff during at least some of his employment and, according to Plaintiff, assigned him the insulation removal project at Sea Cliffs, forcing him to return even though he was aware the project made Plaintiff ill.  (Pl. 56.1 ¶¶ 20, 120.)  The last three factors, however, demonstrate that Ethier's comments do not support an inference of discrimination.  In considering the time between when the remarks were made and

14

the employment action, in discrimination cases, "many courts in this circuit have held that periods of two months or more defeat an inference of causation." *Ragin v. E. Ramapo Cent. Sch. Dist.*, 05-CV-6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010), *aff'd*, 417 F. App'x 81 (2d Cir. 2011) (collecting cases). The "Haitian motherfucker" comment was made once at a holiday party in 2015. (Pl. 56.1 ¶ 53.) Plaintiff was assigned to the Sea Cliffs insulation project in March 2018. (*Id.* ¶ 120; Castille Decl. Ex. B, 202:14-207:8.) Nothing about the remark in late 2015 demonstrates that it was at all connected to Plaintiff's job assignment in 2018. In any event, after Plaintiff complained of the comment, WCS found through its investigation that it was an isolated remark, was not motivated by racial animus, and exhibited no evidence of discrimination. (Pl. 56.1 ¶¶ 88–93.)

As to the "Haitian sensation" comments, Plaintiff does not sufficiently identify when the comments were made such that I can determine whether they were linked to the alleged adverse employment action. With respect to timing, all Plaintiff states is that the comments started in 2015 or 2016. (*Id.* ¶ 63.) Plaintiff does not dispute Ethier made the comment once when a supervisor "told Etheir [sic] that Plaintiff did an excellent job fixing a pool liner on an emergency basis to which Etheir [sic] replied 'We get nothing but the best from our Haitian Sensation,'" and "that its genesis was from after-work volleyball played by [] employees at the beach" and "it was said in response to Plaintiff's excellent play." (*Id.* ¶ 65.)

Even if the comments had occurred within or around the two months prior to Plaintiff's assignment at Sea Cliffs and could support an inference of causation, *Ragin*, 2010 WL 1326779, at *24, it is inconceivable that a juror would view the comment as discriminatory. None of these situations demonstrate that, based on their context, the remarks were meant to be derogatory or were related to the decision-making process for Plaintiff's assignment to Sea Cliffs.

Accordingly, no reasonable juror could find that Plaintiff's assignment to Sea Cliffs constituted a basis for a Title VII, § 1981, or NYSHRL discrimination claim.

### b. Demotion

Plaintiff next claims that, in February 2017, he was demoted from Supervising Maintainer to Maintainer and his salary reduced "due to discrimination." (Pl. 56.1 ¶¶ 33–34; Opp., at 13.) Plaintiff filed a grievance regarding his demotion and WCS's internal grievance panel determined that he should be restored to the title with backpay. (Pl. 56.1 ¶¶ 34–37, 41, 47.) The demotion and pay reduction were discovered to have been due to a "lack of clarity from the WCS documentation." (*Id.* ¶ 47.)

Even though a demotion is generally recognized as an adverse employment action, the facts here do not support such a conclusion. Critically, Plaintiff's title was reinstated and he received back pay for the lost wages during the demotion period. Accordingly, Plaintiff did not suffer from a "sufficiently disadvantageous [action] to constitute an adverse employment action." *Beyer*, 524 F.3d at 163. His reinstatement and back pay restored him to the position he had occupied prior to the demotion, and "Plaintiff has not submitted any evidence that the alleged demotion resulted in any change in pay or benefits" after he was "reinstated and compensated for lost wages." *See, e.g.*, *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) (dismissing discrimination claim where the plaintiff was terminated but then reinstated and compensated with retroactive back pay for the termination period); *see also Hale v. N.Y.C. Dep't of Parks*, 83-CV-509 (CSH), 1988 WL 64846, at *2 (S.D.N.Y. June 9, 1988) (concluding that because the "plaintiff ha[d] been restored to his job, . . . there is nothing left to decide in this discrimination suit as to whether or not he should have been discharged").

16

Plaintiff therefore cannot reasonably assert a discrimination claim based on his temporary demotion.

c.  <u>Failure to Promote</u>

Plaintiff argues he was denied a promotion to a senior position that became open in or around July 2018, while his demotion grievance was pending.  (Pl. 56.1 ¶¶ 94–99.)  Failure to promote constitutes an adverse employment action.  *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002).  However, Plaintiff's discrimination claim for failure to promote is implausible for several reasons.

First, Defendants had a valid, non-discriminatory reason for not promoting Plaintiff.  As explained above, even if Plaintiff could meet the prima facie showing for a case of discrimination, the burden then shifts to Defendants to proffer "legitimate and non-discriminatory reasons for the adverse employment action," *Abdu-Brisson*, 239 F.3d at 468, the burden of which is "light," *Buffalo Hilton Hotel*, 143 F.3d at 52.  Here, Defendants offer numerous legitimate reasons Plaintiff was not offered the promotion.  Before interviewing Plaintiff, Ethier suggested to Figueroa and Perri that Plaintiff was not qualified for the position.  (Def. 56.1 ¶ 97.)  Figueroa and Perri nonetheless interviewed Plaintiff because Figueroa believed Plaintiff was qualified.  (Castille Decl. Ex. D, 67:11.)  Following the interview, however, Figueroa and Perri noted that Plaintiff "showed a poor level of practical knowledge" regarding the subjects an employee in that position would be required to know.  (*Id*. at 75:17-20.)  Additionally, Plaintiff's interviewers reported that he "came across as unsure and unconfident in his answers and did not properly answer any of the questions asked," and failed to exemplify characteristics indicative of positive leadership ability and attitude.  (*Id*. at 75:22-76:3, 77:5-24.)  Figueroa explained that Plaintiff was emotional and was distracted by the demotion, rather than

17

focused on the interview at hand.  (*Id*. 76:8-16.)  Moreover, Plaintiff did not answer any

interview questions from the perspective of a supervisor.  (*Id*. 78:6-17.)  Figueroa and Perri did

not recommend Plaintiff for the position because he was not yet ready for the position and

believed for Plaintiff to be qualified in the future would require a "major shift in attitude."  (*Id*.

77:9–24.)  In the end, the promotion was offered to Antwan Cominsky, who "excelled during the

interview process," "was very resourceful," and displayed the ability to troubleshoot situations.

(*Id*. at 83:10-84:9.)  Plaintiff's performance during his interview, coupled with any background

information the interviewers and hiring personnel already possessed based on his employment,

were legitimate non-discriminatory reasons to offer the promotion to another employee over

Plaintiff.  *See Diello v. Potter*, 697 F. Supp. 2d 410, 413 (W.D.N.Y. 2010), *aff'd*, 413 F. App'x

344 (2d Cir. 2011) ("Candidates' performance at job interviews and feedback from previous

supervisors are both legitimate bases upon which to make promotion decisions, and courts and

juries do not operate as super-personnel departments to question a company's staffing decisions"

(internal quotation marks, citation, and alterations omitted)); *Boyer v. Riverhead Central Sch.*

*Dist.*, 343 Fed. App'x 740, 741 (2d Cir. 2009) (performance at job interview constitutes a

legitimate, non-discriminatory reason for choosing an applicant over plaintiff).  Because Plaintiff

fails to point to any evidence demonstrating that Defendants' legitimate, non-discriminatory

reasons for not promoting him are pretextual, his failure to promote argument fails.

For these same reasons, Plaintiff cannot establish that the circumstances surrounding his

denial of promotion give rise to an inference of discrimination.  Plaintiff interviewed for the

promotion in or around July 2018 and was denied the role shortly thereafter.  (Pl. 56.1 ¶¶ 94,

100.)  There is nothing in the record linking the 2015 "Haitian motherfucker" comment or the

"Haitian sensation" comments to the denial of Plaintiff's promotion.  Moreover, Figueroa and

18

Perri—not Ethier—interviewed Plaintiff and filled out his report. (*Id.* ¶¶ 94–99.) To be sure, Ethier did not believe Plaintiff was qualified for the promotion. Figueroa, however, believed Plaintiff was qualified, yet still scored Plaintiff the lowest of the candidates and affirmed that Plaintiff should not receive the promotion. (*Id.*) No reasonable juror could therefore find that Defendants' failure to promote Plaintiff constitutes a viable Title VII, § 1981, or NYSHRL discrimination claim.

### d. Other Adverse Actions

Plaintiff cites several other adverse employment actions that also do not rise to the level of discrimination. He alleges he was denied shift changes and schedule accommodations and was told that he passed a forklift certification test when he actually failed. (Pl. 56.1 ¶¶ 101–05, 121, 123.) None of these actions constitute a "material adverse change in the terms and conditions of employment," but rather equate to "mere inconvenience[s]" or otherwise minor "alteration[s] of job responsibilities." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000), *abrogated on other grounds by Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (schedule changes were not materially adverse employment actions). Such allegations, without more evidence, are insufficient to demonstrate an adverse employment action for the purposes of a federal or NYSHRL discrimination claim. Moreover, for the reasons discussed above, Plaintiff cannot link Ethier's comments to any of the alleged adverse employment actions. *See id.*

For the foregoing reasons, based on Plaintiff's allegations, no reasonable jury could find that Plaintiff has alleged a viable discrimination claim under Title VII, § 1981, or NYSHRL discrimination, and Defendants' motion for summary judgment as to these claims is GRANTED.

19

### B. *Retaliation*

#### 1. **Applicable Law**

"Claims of disparate treatment under Title VII, the NYSHRL, [and] § 1981. . . . are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209–10 (E.D.N.Y. 2014).  To make out a prima facie case of retaliation at the summary judgment stage, Plaintiff "is required to present" evidence that "(1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) the plaintiff suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action." *Reiss v. Hernandez*, 852 F. App'x 620, 622 (2d Cir. 2021) (footnote omitted).

To establish that she engaged in protected activity under the first prong, Plaintiff "need not establish that the conduct she opposed was actually a violation of Title VII" or other relevant anti-discrimination law, "but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute."  *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (internal quotation marks omitted). "Neither must the plaintiff formally oppose the alleged discriminatory behavior." *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009).  Rather, "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges" are also protected under Title VII and the other relevant statutes.  *See id*. (citation and internal quotation marks omitted).

On "the third element, the proper inquiry is 'whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination.'" *Reiss*, 852 F. App'x at 622 (alterations in original) (quoting *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019)). This encompasses a broader range of conduct than the standard for discrimination claims and "is not limited to discriminatory actions that affect the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

With respect to the fourth prong, a plaintiff can establish a causal connection to support a retaliation claim "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Direct evidence is "'evidence tending to show, without resort to inference, the existence of a fact in question.'" *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 341 (quoting *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1183 (2d Cir. 1992)). This kind of evidence "'would be an admission by the decisionmaker' that he or she made a decision by relying on an improper consideration, *e.g.*, 'I fired him because he was too old.'" *Id.* at 341–42 (quoting *Tyler*, 958 F.2d at 1185). Direct evidence is often unavailable, as "employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464–65 (citation, internal quotation marks, and alterations omitted).

To establish a causal connection on the basis of temporal proximity alone, the "adverse action" must be "very close" in time to the protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). Some courts have taken "[t]he passage of even two or three months [to be] sufficient to negate any inference of causation when no other basis to infer retaliation is alleged." *See, e.g.*, *Williams v. City of New York*, 11-CV-9679 (CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012); *see also Breeden*, 532 U.S. at 273–74 (citing with approval cases holding that three- and four-month gaps between protected activity and adverse action were insufficient to establish a causal connection). However, there is no "bright line [that] define[s] the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship" sufficient for this element of the claim. *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). A reviewing court is to look at the record evidence to evaluate "the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Id.* ("In *Espinal*, we concluded that 'the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom . . . was a defendant in the prior lawsuit, [wa]s sufficient to support an inference of a causal connection.'" (alteration in original)).

A decisionmaker's lack of awareness of the protected activity can also help demonstrate a lack of a causal connection. *See Ragin*, 2010 WL 1326779, at *25; *Laurin v. Pokoik*, 02-CV-1938 (LMM), 2005 WL 911429, at *5 (S.D.N.Y. Apr. 18, 2005) ("[Plaintiff] must demonstrate not only that [employer corporation] as an entity knew of her engagement in the protected activities, but also that the actual decisionmaker(s) knew about her protected activities as well."); *Philippeaux v. Fashion Inst. of Tech.*, 93-CV-4438 (SAS), 1996 WL 164462, at *6 (S.D.N.Y.

Apr. 9, 1996), *aff'd*, 104 F.3d 356 (2d Cir. 1996) (same); *Murray v. Visiting Nurse Servs. of N.Y.*,

528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007) ("[D]istrict courts have consistently held that, with

regard to the causation prong of the *prima facie* standard, absent any evidence to support an

inference that the decisionmakers knew of plaintiffs['] complaints, Plaintiff cannot rely on

circumstantial evidence of knowledge as evidence of causation.") (citation and internal quotation

marks omitted).   "A jury, however, can find retaliation even if the agent denies direct knowledge

of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances

evidence knowledge of the protected activities or the jury concludes that an agent is acting

explicitly or implicit upon the orders of a superior who has the requisite knowledge." *Gordon*,

232 F.3d at 117.

     "Once a prima facie case of retaliation is established, the burden of production shifts to

the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action."

*Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001).  If the employer demonstrates a legitimate,

non-discriminatory reason, then the burden shifts back to the plaintiff to establish that the

"retaliation was a 'but-for' cause of the adverse action, not simply a 'substantial' or 'motivating'

factor in the employer's decision."  *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70

(S.D.N.Y. 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013)).

But-for causation does not "require proof that retaliation was the only cause of the employer's

action—it is enough that the adverse action would not have occurred in the absence of the

retaliatory motive."  *Id*.  "A plaintiff may prove that retaliation was a but-for cause of an adverse

employment action by demonstrating weaknesses, implausibilities, inconsistencies, or

contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" such

that "a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Kwan*, 737 F.3d at 846.

### 2. Application

Plaintiff alleges his assignment to Sea Cliffs and the denial of his requests for accommodations for religious observances and school attendance were in retaliation for his complaints to Human Resources regarding the discrimination he had experienced.  As an initial matter, even though I find that none of Plaintiff's alleged adverse employment actions constitute discrimination, to allege a claim for retaliation, Plaintiff need only show that he "possessed a good faith, reasonable belief that the underlying employment practice was unlawful," *Galdieri-Ambrosini*, 136 F.3d 276 at 292, which Plaintiff does here.  Plaintiff also complained about the "Haitian motherfucker" remark, (Pl. 56.1 ¶¶ 70–71), which, in his Complaint, he does not allege directly constitutes discrimination, but presumably could qualify as a good faith, reasonable belief of unlawful activity, *id.*; (*see* Compl.)

Plaintiff claims that on April 4, 2018, he complained to Human Resources about Ethier's "Haitian motherfucker" comment—a protected activity—after which Ethier retaliated against him by changing his schedule to require work over the weekend.  (Pl. 56.1 ¶ 123.)  Plaintiff believed this change was meant to disrupt his school classes and church attendance, as he had always had Sunday and Monday off for school and religious observance.  (*Id.*)  Defendants urge that the shift changes were not adverse employment actions because they did not materially alter "the terms of [Plaintiff's] employment," (Doc. 47 at 14 (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (discussing "adverse employment action" in the context of an *age discrimination* claim)));  however, that is not the inquiry for retaliation claims.  Instead, I must consider whether "the employer's actions [were] harmful to the point that they could well

dissuade a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  The scope of an "adverse

employment action" for retaliation claims encompasses a broader than it is for discrimination

claims and "is not limited to discriminatory actions that affect the terms and conditions of

employment."  *Vega*, 801 F.3d at 90.  Shift changes that disrupt time off can constitute a

retaliatory adverse action.  *See Hicks v. Baines*, 593 F.3d 159, 169 (2d Cir. 2010) (concluding

that plaintiff's evidence of "punitive scheduling" was sufficient to defeat a motion for summary

judgment on retaliation claim).  Shift changes rise to the level of an adverse employment action

if they tend to significantly disrupt the employee's routine.  *See*, *e.g.*, *Forsythe v. N.Y.C. Dep't of

Citywide Admin. Servs.*, 733 F. Supp. 2d 392, 401 (S.D.N.Y. 2010), *aff'd*, 428 F. App'x 40 (2d

Cir. 2011) (shift changes that "severely disrupted [plaintiff's] child care routine and ability to

spend time with his son" constitute a triable issue of fact that could not be decided on motion for

summary judgment); *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 524 (S.D.N.Y. 2008) (denying

summary judgment on the basis that "a transfer that affects a parent's ability to spend time with

and care for a child" could support a retaliation claim); *Little v. Nat'l Broadcasting Co.*, 210 F.

Supp. 2d 330, 377 (S.D.N.Y. 2002) (noting that "a shift assignment that makes a normal life

difficult for the employee" may constitute an adverse employment action for retaliation).

     Here, Plaintiff's shifts were changed such that he lost his Sundays off, preventing him

from attending church or school on those days.  (Pl. 56.1 ¶ 123; Castille Decl. Ex. J.)  According

to the Shift Change Memo sent to employees on April 12, 2018, all employees senior to Plaintiff

received no changes to their work schedules.  (Castille Decl. Ex. J.)  Another worker at the same

seniority level as Plaintiff, Scheurich, received a shift change, but the change still allowed him to

keep his scheduled days off, including Sundays.  (*Id*.)  The schedules also changed for three

employees more junior than Plaintiff—Canizzaro, Komamitskiy, and Rant—but they too were able to keep their weekend days off.  (*Id*.)  Plaintiff was thus the most senior employee—and the only Black and Haitian employee—whose schedule changed to exclude a weekend day, and the only employee with no weekend days off, including the most junior employee.  (*Id*.)  Defendants also assert that shifts and work schedules were assigned by seniority, a practice Plaintiff disputes was followed when it came to his schedule change, (*see id*. ¶ 123), demonstrating a genuine issue of material fact concerning the assignment of shifts and the reasoning behind the changes, from which a reasonable juror could determine that Ethier retaliated against Plaintiff.

Plaintiff also establishes a likelihood of casual connection.  Ethier sent the Shift Change Memo explaining the changes, while noting the seniority ranks, less than two weeks after Plaintiff's complaint to Human Resources, of which Ethier was aware.  (*Id*.; Castille Decl. Ex. B 169:13-170:9.)  Specifically, Plaintiff complained to Human Resources on April 4, 2018, and received notice of his shift change on April 11, 2018.  (Castille Decl. Ex. I.)  Importantly, by the time Ethier changed Plaintiff's shifts, Plaintiff had made four complaints about Ethier's treatment of him.  (Pl. 56.1 ¶¶ 123, 156, 158, 292.)  Seven days is certainly "very close" temporal proximity to establish a causal connection.  *Clark Cty. Sch. Dist.*, 532 U.S. 268 at 273.

Having met his burden of a prima facie showing, "the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Bratton*, 243 F.3d at 625.  Rather than assert a legitimate non-retaliatory reason for the change, Defendants argue (incorrectly and under the wrong standard) that shift changes are not adverse employment actions under the law.  (MSJ at 19.)  They ignore the fact that scheduling changes that are harmful "to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination" are sufficient for a retaliation claim.  *White*, 548 U.S. at

57.  After reviewing the record, the only reason I could find regarding the shift changes is what Defendants outlined in the initial notice of the shift change dated April 11, 2018, which reads that the changes were necessary "to facilitate our daily departmental goals while maintaining adequate staff coverage levels."  (Castille Decl. Ex. I.)  This vague explanation is inadequate to show why Plaintiff, a senior employee, was denied his requested days off, when junior non-Black and non-Haitian employees' schedules were not disturbed.

A reasonable juror, looking at the record, could find that Defendants' shift changes, made shortly after several of Plaintiff's complaints, could constitute retaliation in violation of Title VII, § 1981, and the NYSHRL.[4]  For these reasons, Defendants' motion for summary judgment on Plaintiff's retaliation claims is DENIED.

### C.  *Hostile Work Environment*

#### 1.  **Applicable Law**

Plaintiff's pleadings do not clearly set forth whether he intends the term "hostile work environment" to represent an independent claim for relief.  Although the complaint uses the phrase "hostile work environment" several times, the complaint does not formally assert a hostile work environment claim.  Nonetheless, since the parties have addressed Plaintiff's reference to a "hostile work environment" as a separate claim in their summary judgment papers, I will also analyze Plaintiff's hostile work environment arguments as an independent claim for relief.

A plaintiff may establish a hostile work environment claim under Title VII and the NYSHRL by demonstrating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[4] Because I find that a genuine issue of material fact exists as to whether Defendants retaliated against Plaintiff through shift changes, I need not examine whether Defendants' other alleged actions could constitute retaliation.

employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2005) (citation omitted). "[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010). This does not require a plaintiff to show that her work environment was "unendurable or intolerable." *Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2008) (internal quotation marks omitted).

"This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo*, 770 F.3d at 114). Plaintiff must allege that the incidents were "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (quoting *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) ("[T]he plaintiff must show more than a few isolated incidents of racial enmity." (citation omitted)). "Incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (citation and internal quotation marks omitted). However, "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards her as a result of her membership in a protected class." *Bermudez v. City of*

*N.Y.*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (quoting *Sullivan v. Newburgh Enlarged Sch.*

*Dist. Clarence Cooper*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003)).  "It is 'axiomatic that

mistreatment at work, whether through subjection to a hostile environment or through other

means, is actionable . . . only when it occurs because of an employee's protected characteristic,'

such as race or gender."  *Lloyd v. Holder*, 11-CV-3154 (AT), 2013 WL 6667531, at *11

(S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

      Finally, a plaintiff must "show a basis for imputing the objectionable conduct to the

employer."  *Gorzynski*, 596 F.3d at 103.  When the alleged harasser "is in a supervisory position

over the plaintiff, the objectionable conduct is automatically imputed to the employer."  *Id.*

### 2.  Application

      Plaintiff's hostile work environment claim is based on many of the same allegations that

underlie his discrimination claims:  the "Haitian motherfucker" and "Haitian sensation"

comments, his assignment to remove insulation from the Sea Cliffs exhibit, his demotion and

denial of promotion, and shift changes.  (*See* Compl.)  As discussed *supra*, several of these

incidents are benign or not materially adverse to Plaintiff's employment.  The only claims I have

not already addressed and dismissed for failure to meet the standard of adverse actions involve

the "Haitian" comments.  I find that these incidents are not severe or frequent enough such that a

reasonable juror could find that Plaintiff was the victim of a hostile work environment.

      First, Ethier only made the more explicit of the two comments, referring to Plaintiff as a

"Haitian motherfucker," one time in December 2015 after Plaintiff won a raffle prize at a holiday

party.  (Pl. 56.1 ¶¶ 53, 58.)  In evaluating Plaintiff's complaint about this comment, WCS

determined that it was an "isolated, one-time remark" that "was not accompanied by an

expression of hostility or racial animus," "was in a setting of a party," "has not been repeated,"

and established "no evidence of discrimination or retaliation towards [Plaintiff]."  (Def. 56.1 ¶¶

8993.)  Such a random, one-off comment that is not shown to have been motivated by racial

animus is insufficient to establish a hostile work environment.  *See Whidbee*, 223 F.3d at 69

("Incidents that are few in number and that occur over a short period of time may fail to

demonstrate a hostile work environment" (citation and internal quotation marks omitted)); *Paul

v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 167 (E.D.N.Y. 2015) (few

comments that plaintiff "cannot be 'boss' because he is old andHaitian" do not support a hostile

work environment claim); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d

386, 406 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (few references comparing

plaintiff to "Aunt Jemima" and "down on the plantation" were not sufficient to state a claim for

hostile work environment); *Garone v. United Parcel Serv., Inc*., 436 F. Supp. 2d 448, 469

(E.D.N.Y. 2006), *aff'd*, 254 Fed. App'x. 108 (2d Cir. 2007) (holding that "the occasional off-

color remark" did not rise to the level of an objectively hostile work environment).

       With regard to the "Haitian sensation" comment, Figueroa testified that Ethier made the

comment a few times in a joking manner in connection with his reference to Plaintiff as a

"fitness guy."  (Def. 56.1 ¶ 68.)  Figueroa testified that it seemed "welcome by Plaintiff."  (*Id.*

¶ 66)  Although the phrases do reference Plaintiff's race, Plaintiff does not demonstrate that

Ethier's comments were motivated by racial animus, *Bermudez*, 783 F. Supp. 2d at 578, and they

are not sufficiently severe enough to transform Plaintiff's workplace into a hostile work

environment, *Alfano*, 294 F.3d 365 at 374.  *See, e.g., Postgraduate Ctr. for Mental Health*, 97 F.

Supp. 3d at 167 (references to the fact that plaintiff "is old and Haitian" do not support a hostile

work environment claim); *Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376, 388

(S.D.N.Y. 2002) (allegation that plaintiff was called "good boy" multiple times was insufficient

to sustain hostile work environment claim) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)).  No reasonable juror could, based on these facts, find that Defendants created a hostile work environment, and I must dismiss those claims.

Plaintiff also mentions in his opposition brief that Defendant WCS is vicariously liable for the conduct of Defendant Ethier based on Ethier's role as a harasser in cultivating a hostile work environment and on Ethier's § 1981 and Title VII discrimination.  (Opp., at 22–24.) Plaintiff does not allege this in his Complaint.  (*See* Compl.)  Nonetheless, because I do not find Defendant Ethier liable for any of these counts, I do not impute liability to WCS for his actions, and any count based on that theory is dismissed as well.

        **D.**    ***City and State Law Claims***

        **1.  NYCHRL**

        a. <u>Discrimination Claims Against Defendants WCS and NYA</u>

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 109 (2d Cir. 2013) (citations omitted).  "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." *Id*.

"Section 8-107(1)(a) of the NYCHRL makes it 'an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Id.* at 109–10 (quoting N.Y.C. Admin. Code § 8-107(1)(a)).  "To plead a

discrimination claim under the NYCHRL, a plaintiff must allege only that she [was] treated less well. . . . because of a discriminatory intent." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021). "[T]he challenged conduct need not even be tangible (like hiring or firing)." *Id.* (internal quotation marks omitted).

   As previously mentioned, based on the evidence in the record, Plaintiff's claims alleging that he was subjected to more arduous and dangerous work than other employees at his level fail. (Section IV.A.2.a.)  Similarly, because his pay and position were restored, Plaintiff cannot show that Defendants discriminated against him by demoting him, (Section IV.A.2.b), or that his lack of a promotion was based on discrimination rather than Plaintiff's performance during the interview compared to other candidates' performances, (Section IV.A.2.c).

   The shift changes and denial of schedule accommodations do not rise to the level of discrimination under Title VII, § 1981, or the NYSHRL.  The NYCHRL, however, employs a more liberal standard and only requires that a plaintiff show that "she [was] treated less well. . . . because of a discriminatory intent." *Syeed*,568 F. Supp. 3d at 321.  As discussed with regards to Plaintiff's retaliation claim, Plaintiff has demonstrated that he was the only employee whose schedule changed from including weekends off to work throughout the weekend.  Moreover, Plaintiff was the only Haitian and Black employee to endure such a shift change, and even the employees more junior to Plaintiff kept their days off or, if their schedule changed, kept at least a weekend day off.   Applying the NYCHRL's more liberal standard to these claims and construing them "broadly in favor of [Plaintiff], to the extent that such a construction is reasonably possible," *Mihalik*, 715 F.3d at 109, and bearing in mind that the shift changes impacted Plaintiff's ability to attend religious services and school on the weekend, a reasonable juror could find that these actions constituted NYCHRL discrimination.  Defendants' motion for

summary judgment with regards to Plaintiff's NYCHRL discrimination claim is therefore denied.

### b. Aider and Abettor Liability as to Defendant Ethier

An individual defendant may be held liable under the NYSHRL and NYCHRL for aiding and abetting a violation of the laws "if he participates in the conduct giving rise to the discrimination claim." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009). However, "[a]n individual may not be held liable . . . merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating that law." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (internal quotation marks omitted). Accordingly, an aiding and abetting claim is only viable when "an underlying violation has taken place." *See Falchenberg v. N.Y.S. Dept. of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009) (summary order); *see also Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011) ("[L]iability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." (quoting *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999)), *aff'd*, 506 F. App'x 47 (2d Cir. 2012).

Here, because I find that a reasonable juror could find Defendants WCS and NYA liable for discrimination under the NYCHRL, and because Ethier participated in the conduct giving rise to that claim, I find that Ethier could be held liable for aiding and abetting a violation of the NYCHRL. Ethier sent the Shift Change Memo identifying the changes to Plaintiff's schedule as well as categorizing the seniority levels of all those employees whose schedules had been altered or retained a weekend day off. (Pl. 56.1 ¶ 123; Castille Decl. Ex. J.) The record makes clear that Ethier was at least involved in, if not in charge of, scheduling employees' work shifts. (*See id.* ¶¶ 80–85, 122–24.) Moreover, Plaintiff asserts that shifts and work schedules were assigned by

seniority, which Defendants dispute, (*see id*. ¶ 123), demonstrating a genuine issue of material fact from which a reasonable juror could find that Ethier discriminated against Plaintiff.

### c. Vicarious Liability as to WCS

"[U]nder the NYCHRL, vicarious liability for the discriminatory conduct of an employee can be imposed in three circumstances:  (1) where the offending employee exercised managerial or supervisory responsibility. . . . ; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; and (3) where the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent [it]." *Schaper v. Bronx Lebanon Hosp. Ctr*., 408 F. Supp. 3d 379, 396 (S.D.N.Y. 2019) (citation and internal quotation marks omitted).

Plaintiff alleges that WCS is liable for Defendant Ethier's discrimination under the NYCHRL.  Since Defendant Ethier was Plaintiff's manager/supervisor, NYCHRL vicarious liability may be imposed on Defendant WCS if Ethier is determined to be liable for violations of the NYCHRL.  *See id*. (denying summary judgment motion based on employer's vicarious liability because individual defendant was plaintiff's supervisor).  Because I deny Defendants' motion for summary judgment with regard to Defendant Ethier's alleged discrimination under the NYCHRL, I also deny it as to Defendant WCS.

### d. Retaliation Claims Against WCS and NYA

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik*, 715 F.3d at 112 (citations omitted).  "New York courts have broadly interpreted the

NYCHRL's retaliation provisions," construing acts in opposition to "include situations where a person, before the retaliatory conduct occurred, merely made clear her disapproval of [the defendant's] discrimination by communicating to [him], in substance, that she thought [his] treatment of [the victim] was wrong." *Id.* (internal quotation marks omitted).  "Similarly, the First Department has held that no challenged conduct may be deemed nonretaliatory unless a jury could not reasonably conclude from the evidence that such conduct was. . . . reasonably likely to deter a person from engaging in protected activity." *Id*. (internal citation and quotation marks omitted).  "This assessment [should] be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct." *Id.* (citation omitted).

Here, because the standard for retaliation under the NYCHRL is broader in scope than the standards under Title VII, § 1981 and the NYSHRL, and because I find that a reasonable juror could find that Defendants retaliated against Plaintiff under federal and state law through the disruptive shift changes, Defendants' motion for summary judgment as to Plaintiff's NYCHRL claim for retaliation is DENIED.  *See, e.g.*, *Schaper*, 408 F. Supp. 3d at 394 ("Because Plaintiff's claims survive the higher standard required under Title VII and NYSHRL, the Plaintiff's claims also survive under the NYCHRL."); *Cadet v. All. Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 235 (S.D.N.Y. 2022) ("State and federal civil rights statutes serve as a floor below which the City's Human Rights law cannot fall." (internal quotation marks omitted)); *Baptiste v. City Univ. of New York*, No. 22-CV-2785 (JMF), 2023 WL 4266914, at *6 (S.D.N.Y. June 29, 2023) ("Because the protections afforded by the NYSHRL and the NYCHRL are at least as protective as those guaranteed by the federal antidiscrimination laws, a plaintiff who

pleads a prima facie case of race-based retaliation under Section 1981 necessarily does so under the state and city laws as well.").

### 2.  NYSHRL

Because Plaintiff has not established a viable discrimination claim under the NYSHRL, Ethier could not have aided and abetted Defendants WCS and NYA in discriminating against Plaintiff under the NYSHRL.  *See Rettino v. N.Y.C. Dep't of Educ.*, 2021 WL 2987113, at *6 (S.D.N.Y. July 15, 2021) ("Aiding and abetting is only a viable theory where an underlying violation has taken place.").  Accordingly, I must dismiss this claim against Defendant Ethier.

However, because I concluded that Plaintiff's NYSHRL retaliation claim is viable, I am compelled—for the same reasons that I denied Defendants' motion for summary judgment with respect to the discrimination claim against Ethier under an aider and abettor theory, *supra* IV.D.1.b—to deny Defendants' motion for summary judgment with respect to the retaliation claim against Ethier under an aider and abettor theory.

### V.   <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff's claim for (1) discrimination under Title VII against Defendants WCS and NYA (Count One) is GRANTED; (2) retaliation under Title VII against Defendant WCS and NYA (Count Two) is DENIED, (3) discrimination under 42 U.S.C. § 1981 against all Defendants (Count Three) is GRANTED, (4) retaliation under 42 U.S.C. § 1981 against all Defendants (Count Four) is DENIED, (5) discrimination under NYSHRL against Defendants WCS and NYA (Count Five) is GRANTED, (6) retaliation under NYSHRL against Defendants WCS and NYA (Count Six) is DENIED, (7) discrimination and retaliation under NYSHRL against Defendant Ethier based on an aider and abettor theory (Count Seven) is GRANTED in part and DENIED in part,

(8) discrimination under NYCHRL against Defendants WCS and NYA (Count Eight) is

DENIED, (9) retaliation under NYCHRL against Defendants WCS and NYA (Count Nine) is

DENIED, (10) discrimination under NYCHRL against Defendant Ethier based on an aider and

abettor theory (Count Ten) is DENIED, and (11) discrimination under against WCS based on

vicarious liability (Count Eleven) is DENIED.

The Clerk of Court is respectfully directed to close the motion at Doc. 45. As there are

genuine disputes of material fact as to Plaintiff's retaliation and NYCHRL claims, the parties are

directed to appear for a post-discovery conference on April 18, 2024, at 2:00 p.m. by dialing

888-363-4749 and using conference code 2682448. The parties are further directed to submit a

joint letter on or before April 3, 2024, setting forth proposed trial dates and anticipated length of

trial.

SO ORDERED.

Dated: March 18, 2024
       New York, New York

Vernon S. Broderick
United States District Judge